IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-CV-799-CAB (OES)

RITA BASTIEN,

Plaintiff,

v.

THE OFFICE OF SENATOR BEN NIGHTHORSE CAMPBELL,

Defendant.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC - 5 2005

GREGORY C. LANGHAM
CLERK

---

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS
### THE AMENDED COMPLAINT

---

This matter is before the Court on Defendant's Motion to Dismiss the Amended Complaint on the Grounds of Abatement and Mootness. After considering the motion, having reviewed the materials on file, having heard oral argument, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### BACKGROUND

Plaintiff Rita Bastien ("Bastien") was employed by Defendant, the Office of Senator Ben Nighthorse Campbell, from July 7, 1994 until April 10, 2001. From July 7, 1994, through September 4, 2000, Plaintiff served as a Senate Aide in Defendant's Englewood, Colorado office. On September 5, 2000, Defendant transferred Plaintiff to the Colorado Springs, Colorado office. She worked there until her termination on April 10, 2001.

On April 30, 2001, Plaintiff filed suit against Defendant under the Congressional

Accountability Act of 1995, 2 U.S.C. §§ 1302-1438 ("the CAA"), and the Age Discrimination in Employment Act of 1967 ("the ADEA"), 29 U.S.C. § 621 *et seq.* On September 10, 2001, Plaintiff filed an Amended Complaint, which included a claim for retaliation. The Amended Complaint alleged that Defendant discriminated against Plaintiff, due to her age, by treating her less favorably than younger staff members. Specifically, Plaintiff claimed that Defendant paid her less, gave her less favorable job assignments, transferred her without reason, increased her job duties without reimbursement, increased her expenses without reimbursement, and terminated her without cause. See Amended Complaint at 9.

On June 27, 2002, this Court dismissed Plaintiff's claims. Bastien v. Office of Campbell, 209 F. Supp. 2d 1095, 1106 (D. Colo. 2002). The Court reasoned that Plaintiff's job responsibilities "were directly related to the due functioning of the legislative process" and, therefore, Defendant's decision to transfer, and later terminate, Plaintiff was "immunized by the protections afforded by the Speech or Debate Clause of the United States Constitution." Id.

The Plaintiff appealed the decision and on December 10, 2004, the United States Court of Appeals for the Tenth Circuit reversed this Court's ruling. Bastien v. Office of Senator Ben Nighthorse Campbell, 390 F.3d 1301, 1319 (10th Cir. 2004). The Tenth Circuit held that "[a] personnel decision is not a legislative act, as defined by the Supreme Court, and is therefore not entitled to immunity." Id. at 1318 (internal quotations omitted). The Court

of Appeals also found that Plaintiff's "discussions with constituents and others were not an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." Id. at 1319 (citing Gravel v. United States, 408 U.S. 606, 625 (1972)) (internal quotations omitted).

On January 3, 2005, Senator Ben Nighthorse Campbell's term of office expired. Shortly thereafter, and before the Tenth Circuit had filed a mandate in this Court, the Senator's former office filed a motion before the Court of Appeals requesting that the appeal be dismissed on the grounds of abatement. Essentially, Defendant argued that the case abated when the Senator's term ended as there was no longer a Senate Office for Ben Nighthorse Campbell eligible for suit under the CAA. The Tenth Circuit, however, declined to grant the motion and subsequently issued the mandate. See Bastien v. Office of Senator Ben Nighthorse Campbell, 409 F.3d 1234, 1236 (10th Cir. 2005).

Once the mandate issued, the Defendant filed a motion to dismiss before this Court. The motion to dismiss is very similar to the abatement motion submitted to the Tenth Circuit. Essentially, Defendant contends that a necessary party to the suit, the Office of Senator Nighthorse Campbell, ceased to exist on January 3, 2005. Thus, according to Defendant, this suit cannot proceed.

## DISCUSSION

The CAA applies the protections of eleven workplace statutes to employees of the

federal legislative branch.[1] See 2 U.S.C. 1302(a)(1)-(11); Bastien, 390 F.3d at 1304. For instance, the Act protects legislative employees from employment discrimination based on age, race, color, religion, sex, national origin, or disability. 2 U.S.C. § 1311(a). The CAA also prohibits a covered employer from retaliating against an employee for exercising his or her rights under the Act. Id. § 1317.

In order to implement the provisions of the Act, Congress created an independent office within the legislative branch known as the Office of Compliance ("OOC"). See id. § 1381; Senator Charles Grassley & Jennifer S. Schmidt, Practicing What We Preach: A Legislative History of Congressional Accountability, 35 Harv. J. on Legis. 33, 46 (1998) ("The Office of Compliance is an independent, nonpartisan office within the Legislative Branch set up to administer and enforce the laws applied by the Congressional Accountability Act."). The OOC, through a five-member Board of Directors, is responsible for promulgating the regulations necessary to apply the CAA to Congress. Bastien, 390 F.3d at 1304. The OOC must also oversee the elaborate complaint procedure created by the Act.

---

[1] The statutes applied to Congress by the CAA are: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; (2) the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*; (3) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; (4) the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.*; (5) the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611 *et seq.*; (6) the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*; (7) Chapter 71 of Title 5 (related to federal service labor-management relations); (8) the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001 *et seq.*; (9) the Worker Adjustment and Retraining Notification Act, 29 U.SC. § 2101 *et seq.*; (10) the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; and (11) Chapter 43 of Title 38 (relating to veterans' employment and reemployment). See 2 U.S.C. § 1302; Dotson v. Griesa, 398 F.3d 156, 173 (2d Cir. 2005).

See 2 U.S.C. §§ 1401-1406; James J. Brudney, <u>Congressional Accountability and Denial: Speech or Debate Clause and Conflict of Interest Challenges to Unionization of Congressional Employees</u>, 36 Harv. J. on Legis. 1, 9 (1999).

The complaint procedure created by the CAA, which establishes the exclusive method through which a congressional employee may bring a claim against their employer for a violation of any of the protections provided by the Act, contains several steps. See <u>id.</u> §§ 1361(d)(1); 1401-08. First, the aggrieved employee must take part in counseling and mediation sessions. <u>Id.</u> §§ 1401-03. The next step allows the employee to make an election: she can either file a complaint with the OOC and obtain a hearing before a hearing officer or she may file suit in federal district court. <u>Id.</u> §§ 1401, 1404. If the employee chooses to file a formal complaint with the OOC and receives an unfavorable decision, she can then appeal to the Board of Directors of the OOC and, if need be, then to the United States Court of Appeals for the Federal Circuit. <u>Id.</u> §§ 1406-07.

Under the Act, whether the employee pursues the administrative appeal or the civil action, the employee may only file a complaint against his or her "employing office." See <u>id.</u> §§ 1405(a) & 1408(b); <u>Bastien</u>, 390 F.3d at 1304. The term "employing office," as it pertains to this case, means "the personal office of a Member of the House of Representatives or of a Senator...." 2 U.S.C. § 1301(9)(A). A congressional employee may not file a claim against an individual member of Congress. See <u>Bastien</u>, 390 F.3d at 1304; Brudney, <u>supra</u>, at 10. Once a complaint is made, the employing office is represented by either the Office of

5

House Employment Counsel or the Senate Chief Counsel for Employment. See Bastien, 390 F.3d at 1304 (citing 2 U.S.C. § 1408(d); Brudney, supra, at 10 n.46). Any damages that result from a complaint are paid from OOC's treasury account. 2 U.S.C. § 1415. Thus, a member of Congress cannot be individually liable for damages under the CAA. See Brudney, supra, at 10-11 (noting that the CAA immunizes congressional members from personal liability).

In this case, Plaintiff elected to file suit against her employing office, the Office of Senator Ben Nighthorse Campbell, as required by the CAA. At the time that she filed the suit, Senator Campbell was still in office. However, during the pendency of this case, which included an appeal to the Tenth Circuit, Senator Campbell ceased to hold office. Defendant claims that such fact has caused the case to abate. Defendant argues that Plaintiff has lost her right to proceed under the CAA because the Office of Senator Ben Nighthorse Campbell has ceased to exist. Essentially, Defendant argues there is no longer a proper defendant in this case. Defendant further contends that such facts make the case moot.

Thus, the question now pending before the Court, which as far as the Court can tell is a matter of first impression, is whether a suit against a member of Congress under the CAA abates or becomes moot when the member leaves office. For the following reasons, the Court finds that it does not.

**I.    Abatement**

"[A]batement of a case usually follows, as of course, when there is no one to respond

to a judgment which might be or has been entered in a case. When a case reaches that posture the futility of its continuing is evident, and it abates." Acheson v. Fujiko Furusho, 212 F.2d 284, 288 (9th Cir. 1954), cited with approval in Tom Wing Po v. Acheson, 214 F.2d 661, 661 (10th Cir. 1954). Thus, the Court must determine whether there is a party to respond to a judgment which might be entered in this case even though Senator Nighthorse Campbell no longer holds office. After reviewing the CAA, and studying its legislative history extensively, the Court finds that there is such a party. The CAA, along with its corresponding history, make clear that Congress is the party which must answer to claims filed thereunder, not the individual members. Thus, the fact that Senator Nighthorse Campbell is no longer in office is irrelevant.

A review of the several aspects of the CAA supports the Court's conclusion. For example, under the CAA, the defendant in any civil case filed under the Act must be "the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred." 2 U.S.C. § 1408(b). A member of Congress cannot be a named defendant under the CAA. See Bastien, 390 F.3d at 1304; Brudney, supra, at 10. Any settlements or damage awards that result from a suit under the Act are paid from a congressional treasury account. 2 U.S.C. § 1415. The individual members cannot be liable under the CAA. See id.; Brudney, supra, at 10. In addition, any time a congressional office is named as a defendant in a CAA case, such office is represented by either the Office of House Employment Counsel or the Senate Chief Counsel for Employment. See Bastien, 390 F.3d

at 1304 (citing 2 U.S.C. § 1408(d); Brudney, supra, at 10 n.46). The member does not hire his or her own private attorney. See Brudney, supra, at 10.

All of these facets of the CAA indicate that Congress, in passing the Act, intended that it, as an institution, be responsible for the acts of its members, at least in the financial sense of the term. See Brudney, supra, at 10 ("[T]he CAA shields members themselves from litigation even while making Congress accountable as an institution."); Steven F. Huefner, The Neglected Value of the Legislative Privilege in State Legislatures, 45 Wm. & Mary L. Rev. 221, 307 (2003) (noting that the Congressional Accountability Act "allows congressional employees to bring personnel actions only against the institution through the 'employing office' of the employee, rather than personally against an individual legislator"). In order to effectuate this policy, Congress created the fictional entity of the "employing office" to serve as the defendant in any CAA case. This entity, however, does not represent the individual member of Congress. Rather, it represents Congress as a whole. The term "employing office" does nothing more than indicate where the discrimination occurred.

As previously found by this Court, the term "employing office" actually refers to Congress and Congress is the responsible entity under the CAA. These findings combined with the fact that Congress is a continuing party indicate that there is a party to answer to any judgment that may be attained in this case.

The Court's decision is supported by the purpose of the CAA. The CAA was enacted to "fully apply antidiscrimination and employee protection laws to Congress." 141 Cong.

Rec. S439-03, S442 (statement of Senator Grassley). The Act intended to provide congressional employees with the same employment rights as workers in the private sector.[2] See id. at S441. It "stands for the basic proposition that those who make the laws in this country have to live under the laws that they make, as other citizens do." Id. at S450 (statement of Senator Thompson). Senator Grassley, co-sponsor of the CAA, spoke to the purpose of the Act in the following terms:

> The purpose of this legislation is to end the environment in this country where we have two sets of laws-one for Capitol Hill and the one for everybody else, everywhere else in the country. It will end a situation where there is one set of laws for Pennsylvania Avenue and another set of laws for Main Street, U.S.A. It will end the situation where employees of Congress do not have the same employment and safety rights and access to the courts for the enforcement of those rights that private sector employees have.

141 Cong. Rec. S529-04, S533 (statement of Senator Grassley). See also Lex K. Larson, Employment Discrimination § 5.04[5] (2d ed. 2005) (noting that the purpose of the CAA was to make "applicable to both houses of Congress the same laws that apply to private sector employees").

Defendant's argument, however, completely ignores the policy of the CAA.

---

[2] Prior to 1995, congressional employees were not entitled to all of the employment rights that employees in the private sector enjoyed. See Larson, supra, § 5.04[5]. For instance, congressional employees could not bring suit in federal court to enforce their rights. Id. In addition, any rights that congressional employees did have were created by several different statutes that were less than ideal in terms of organization. See id. (noting that prior to 1995 congressional employees were covered by a patchwork quilt of laws); 141 Cong. Rec. S439-03, 442 (statement of Senator Grassley discussing the laws that protected congressional employees prior to 1995).

According to Defendant's interpretation of the statute, members of Congress could discriminate against their employees in the last months, or even years, of their term and prevent recovery on the part of the employees by simply not returning to office. In other words, if the member knew he or she was not returning to office next term, he or she could discriminate at will for any reason they wished and the employees would have no recourse for the unlawful acts. Surely, this was not the intent of the Congress when it passed the CAA. As noted above, Congress passed the CAA to make the legislative branch subject to the same laws as the private sector and to give congressional employees the same rights as employees in the private workplace. Defendant's theory would not support this goal; it would once again give congressional members the immunity that the CAA intended to take away. Defendant's argument would also, in contravention of the purpose of the CAA, subject Congress to different standards than private employers as it is well-known that private employers cannot avoid liability by simply resigning from their job. Thus, the Court must reject Defendant's argument. See Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); Harebert v. Healthcare Services Group, 391 F.3d 1140, 1149 (10th Cir. 2004) ("Courts must guard against interpretations that might defeat a statute's purpose.").

## II.    Mootness

In addition to claiming that this case has abated, Defendant also avers that this case

became moot when Senator Nighthorse Campbell left office. However, "[t]he burden of demonstrating mootness is a heavy one." Los Angeles County v. Davis, 440 U.S. 625, 631 (1979) (internal quotations omitted). "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996). "Article III of the Constitution allows federal courts to adjudicate only 'actual, ongoing controversies.'" Shawnee Tribe v. United States, 423 F.3d 1204, 1212 (10th Cir. 2005) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)). Federal courts are "not empowered to decide moot questions or abstract propositions." North Carolina v. Rice, 404 U.S. 244, 246 (1971); see also Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997). Thus, once an actual, ongoing controversy ceases to exist the case becomes moot and the court lacks jurisdiction to hear the case. See United States v. Seminole Nation of Oklahoma, 321 F.3d 939, 943 (10th Cir. 2002).

"Constitutional mootness exists when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Schutz v. Thorne, 415 F.3d 1128, 1138 (10th Cir. 2005) (citing Los Angeles County, 440 U.S. at 631) (internal quotations omitted). As Defendant correctly points out, such a situation arises when "there are no longer adverse parties with sufficient legal interests to maintain the litigation." Goldin v. Bartholow, 166 F.3d 710, 717 (5th Cir. 1999); see also Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1298 (3rd Cir. 1996) ("For there to be an actual controversy the defendant must be so

situated that the parties have adverse legal interests."); Lankford v. City of Hobart, 73 F.3d 283, 288 (10th Cir. 1996) ("A claim is moot when the controversy no longer touches the legal relations of parties having adverse legal interests in the outcome of the case."). A case also "becomes moot when it becomes impossible for the court to grant any effectual relief whatever to a prevailing party." District 22 United Mine Workers of America v. Utah, 229 F.3d 982, 987 (10th Cir. 2000).

However, none of the circumstances outlined above are present in this suit. In the case *sub judice*, there continues to be adverse parties with adverse legal interests. Specifically, those parties are Plaintiff Bastien and Defendant Office of Senator Nighthorse Campbell, which, as stated above, is a fictional entity representing Congress itself. Furthermore, the Court can also grant relief in this case as any judgment obtained by Plaintiff will be satisfied through a congressional treasury account established by the CAA. See 2 U.S.C. § 1415. Such a prospective judgment, which would settle the dispute between the Plaintiff and Defendant, indicates that this case is not moot. See Wirsching v. Colorado, 360 F.3d 1191, 1196 (10th Cir. 2004) ("Generally, it is the settling of some dispute which affects the behavior of the defendant toward the plaintiff that distinguishes a case or controversy from an advisory opinion." (internal quotations and citations omitted)); Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.").

### III. The Named Defendant

In a letter to the Court dated August 29, 2005, Counsel for Defendant requested the Court to "specify in the Order who the defendant will be for the remainder of the litigation." Although the Court is unsure of the basis or need for this request, the Court notes that Defense Counsel mentioned in her letter that she was concerned about future disputes regarding the attorney-client privilege. Thus, in an effort to avoid future disputes on this issue and thereby conserve judicial resources, the Court will address Defense Counsel's request.

As noted above, the term "employing office" does not refer to the individual member of Congress. Thus, the cessation of any member's term of office does not affect the named defendant in a CAA case. The defendant in a CAA suit will always be the employing office, which represents Congress itself. This means that the Defendant in this case will continue to be represented by Senate Chief Counsel for Employment and that any judgment that might be awarded in this case will be satisfied by Congress.

This ruling does not, however, dictate that the Senator, as an individual, has waived his attorney-client privilege in regards to conversations he may have had with the Senate Chief Counsel for Employment. Until this Order, the Senator may have presumed he was the defending party and may have made statements to the Senate Chief Counsel under this impression. However, the fact that the Court has ruled otherwise does not change the fact that the Senator relied upon this assumption in prior litigation preparation. "It is not

necessary that an attorney-client relation have actually existed. One who consults a lawyer with a view to obtaining professional legal services from him or her is regarded as a client for purposes of the privilege." 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2017 (2d ed. 1994). Therefore, the conversations between the Senator and the Senate Chief Counsel are privileged and can only be discovered if the Senator wishes to waive the privilege. See United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998) (noting that "the client alone holds the attorney-client privilege"); In re Vargas, 723 F.2d 1461, 1466 (10th Cir. 1983) (stating that "attorney cannot waive the attorney-client privilege without the client's consent").

## CONCLUSION

In accordance with the foregoing discussion, and for the reasons stated therein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss the Amended Complaint on the Grounds of Abatement and Mootness is **DENIED**.

**IT IS FURTHER ORDERED** that the Office of Senator Nighthorse Campbell will continue to be the named defendant in the above-captioned case. However, notwithstanding the Court's ruling, any statements made by the Senator to the Senate Chief Counsel in relation to this suit will continue to be privileged.

Dated this 1st day of December, 2005.

_____
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION